COURT OF APPEALS
DECISION
DATED AND FILED

October 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP876**

Cir. Ct. No. 2022CV6894

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

MARY MACCUDDEN,

PLAINTIFF-RESPONDENT,

V.

KATY SCARLETT JOHNSON,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: KASHOUA KRISTY YANG, Judge. *Reversed and remanded with directions.*

Before White, C.J., Colón, P.J., and Donald, J.

¶1 DONALD, J. In this case we examine whether statements made by Katy Scarlett Johnson on social media which included the terms "bully," "lunatic," "woke," "god complex," and "white savior," in reference to Mary MacCudden are actionable as defamation. We conclude that Johnson's statements are not

actionable as defamation, and we reverse and remand for the circuit court to enter summary judgment in Johnson's favor.

## BACKGROUND

¶2      MacCudden's online LinkedIn profile represented that she was an "English teacher" and held the position of "Social Justice Coordinator" at Homestead Highschool in the Mequon-Thiensville School District (MTSD).[1]  In January 2022, MacCudden submitted her resignation from MTSD.  At the end of the school year, MacCudden left the school district, but did not update her LinkedIn profile.[2]

¶3      In October 2022, Johnson received a screenshot from a friend of a portion of MacCudden's LinkedIn profile, which Johnson subsequently posted on social media.  Johnson's post included the portion of MacCudden's LinkedIn profile which stated that she worked as a "Social Justice Coordinator" circled in red and Johnson wrote, "[w]hy the hell am I paying for a 'Social Justice Coordinator' in my school district?"  Johnson further stated, "[t]his is just what @mtschools needs; more woke, white women w/ a god complex.  Thank you, white savior."[3]

---

[1] LinkedIn is a social networking website geared towards professionals, who often create and maintain a resume-like profile.

[2] MacCudden eventually updated her LinkedIn profile in July 2023.

[3] A few days later, Johnson learned that MacCudden no longer worked at MTSD.

¶4 Later, Johnson added, "[i]f [MacCudden] really wants to promote equity, perhaps she should forfeit her job to a person of color?" Johnson also replied to a social media user that:

> Teachers who educate are paid a fraction of what these DEI "specialists" earn. Parents know these woke lunatics are bullies. They are bullying you into silence and compliance.
>
> Good teachers should earn more, get support & feel safe. Partner with us and let's put kids first.

¶5 MacCudden sued Johnson for defamation. Johnson moved to dismiss, which the circuit court denied. Relevant to this appeal, Johnson subsequently moved for summary judgment, arguing that her statements were "true, substantially true, or opinions and therefore not defamatory." Johnson also argued that her speech was protected by the First Amendment. MacCudden opposed the motion.

¶6 After hearing oral arguments, the circuit court granted in part and denied in part Johnson's motion for summary judgement. The court found that some of Johnson's statements were not actionable because they were "substantially true." The court explained that MacCudden did work as a Social Justice Coordinator at Homestead High School, MTSD was paying for the Social Justice Coordinator position, and "the label that she is a 'white wom[a]n' is at least substantially true." The court, however, held that a genuine issue of material fact exists as to whether "woke," "god complex," "white savior," "woke lunatics," and "bullies"—constitute "mixed opinions." The court stated that the terms could

"imply allegation of undisclosed defamatory facts" that MacCudden "abuses her position of power over students" and was "unfit[] to teach."[4]

¶7    Johnson filed a petition for leave to appeal the order, which we granted. *See* WIS. STAT. RULE 809.50(3) (2023-24).[5]

## DISCUSSION

¶8    On appeal, Johnson renews her argument that her statements do not constitute defamation. Additionally, Johnson contends that a defamation trial would violate her First Amendment rights. We conclude that Johnson's statements do not constitute defamation, thus, we reverse and remand for the circuit court to enter summary judgment in Johnson's favor. Because we conclude that her statements are not defamation, we do not address whether a defamation trial would violate her First Amendment rights. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶9    Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We review whether a party is entitled to summary judgment independently of the circuit court. *Bay View Packing Co. v. Taff*, 198 Wis. 2d 653, 672, 543 N.W.2d 522 (Ct. App. 1995).

---

[4] It is not clear from the record whether the circuit court found Johnson's statement that "[i]f MacCudden really wants to promote equity, perhaps she should forfeit her job to a person of color?" should go to trial. Nonetheless, we address it below for the sake of completeness.

[5] All references to the Wisconsin Statutes are to the 2023-24 version.

¶10    Summary judgment "may be particularly appropriate in defamation actions in order to mitigate the potential 'chilling effect' on free speech and the press that might result from lengthy and expensive litigation." *Id.* (citation omitted). We have explained that when reviewing a summary judgment motion in a defamation action:

> [W]e first examine the pleadings to determine whether they state a claim for relief. If the pleadings state a claim and the responsive pleadings join the issue, we then must examine the evidentiary record to analyze whether a genuine issue of material fact exists or whether the moving party is entitled to a judgment as a matter of law. Further, "[o]n summary judgment, we must draw all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence."

*Id.* at 672-73 (internal citations omitted); *Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶13, 351 Wis. 2d 479, 840 N.W.2d 255.

¶11    A defamatory communication is:

> (1) a false statement, (2) communicated by speech, conduct, or in writing to a person other than the person defamed, and (3) the communication is unprivileged and … tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.

*Mach v. Allison*, 2003 WI App 11, ¶12, 259 Wis. 2d 686, 656 N.W.2d 766.[6]

---

[6] We note that the three elements of defamation are a "starting point," and there may be additional requirements depending on the status of the plaintiff and defendant. *Wagner v. Allen Media Broad.*, 2024 WI App 9, ¶21, 410 Wis. 2d 666, 3 N.W.3d 758. For example, if a plaintiff is a public figure, we have stated that he or she must prove or plead "actual malice." *Sidoff v. Merry*, 2023 WI App 49, ¶14, 409 Wis. 2d 186, 996 N.W.2d 88. However, because we conclude that Johnson's statements do not meet the false statement element, we do not discuss any additional requirements or the burden at trial further. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

¶12    Johnson argues that her statements were not specifically about MacCudden, but rather were more generally about the "type of person who holds" the position of Social Justice Coordinator.  Johnson additionally argues that her statements were "statements of opinion that are not provably true or false."

¶13    Even if we assume Johnson's statements were about MacCudden, we conclude that the statements are not provably true or false.[7]  Thus, MacCudden's defamation claims fail.  *See Torgerson v. Journal Sentinel, Inc.*, 210 Wis. 2d 524, 534-35, 563 N.W.2d 472 (1997) (stating that "[i]f the challenged statements as a whole are not capable of a false and defamatory meaning … a libel action will fail").

¶14    First, Johnson refers to MacCudden as a "bully."  The term "bully" is a subjective assessment that cannot be proven as true or false.  *See, e.g.*, *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (finding that statements which included the term "bully" were "rhetorical hyperbole, incapable of being proved true or false"); *Couch v. Verizon Commc'ns Inc.*, 105 F.4th 425, 435 (D.C. Cir. 2024) (stating that "merely calling someone a bully is simply 'imaginative expression'" (citation omitted)); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 517 (W.D. Va. 2019) ("'[W]hat one person may perceive as bullying, another may describe as assertiveness.'" (citation omitted)).  Johnson's statements do not allege

---

[7] MacCudden contends that the argument that Johnson's statements were not about MacCudden directly is being raised for the first time on appeal.  MacCudden asks that we "reject those arguments and decide that argument was waived."  Because we do not address this argument, we do not reach the question of waiver.

any specific act of bullying or a specific victim that could be proved or disproved at trial.

¶15    Second, the term "lunatic" is also a subjective assessment that cannot be proven true or false.  *See, e.g.*, **Thomas v. News World Commc'ns**, 681 F. Supp. 55, 64 (D.D.C. 1988) (stating that calling somebody "insane" or a "pitiable lunatic[]" reflects an opinion and not fact); **Stepien v. Franklin**, 528 N.E.2d 1324, 1327, 1329 (Ohio Ct. App. 1988) (stating that the term "lunatic" was not actionable).[8]  Johnson's statement referring to MacCudden as a lunatic is her opinion.

¶16    Third, the terms "god complex," "woke," and "white savior" are vague and do not have a clear meaning or definition.  For example, some Americans define "wokeness" as "being informed, educated on, and aware of social injustices;" other Americans use it to mean "being overly politically correct and policing others' words."[9]  We are not persuaded that the terms are definitive enough to allow a jury to determine whether these terms are true or false.  *See* **Bauer v. Murphy**, 191 Wis. 2d 517, 532 n.13, 530 N.W.2d 1 (Ct. App. 1995).

¶17    In addition, the statement that "[i]f [MacCudden] really wants to promote equity, perhaps she should forfeit her job to a person of color?" is not

---

[8] In response, MacCudden points to two cases involving the term "lunatic": **Goldwater v. Ginzburg**, 261 F. Supp. 784, 786-87 (S.D.N.Y. 1966), and **Powers v. Gastineau**, 568 N.E.2d 1020, 1024 (Ind. Ct. App. 1991).  Neither case, however, considered whether the term could be proven false.

[9] *See Americans divided on whether "woke" is a compliment or insult*, Ipsos (Mar. 8, 2023), https://www.ipsos.com/en-us/americans-divided-whether-woke-compliment-or-insult; Kiara Alfonseca, *What does 'woke' mean and why are some conservatives using it*, ABC News (Jan. 23, 2024), https://abcnews.go.com/Politics/woke-conservatives/story?id=93051138.

actionable. This is a statement about what Johnson believes that MacCudden should do in the future, not about what she has done in the past. Thus, it is not a statement of fact that can be proven or disproven. *Laughland v. Beckett*, 2015 WI App 70, ¶27, 365 Wis. 2d 148, 870 N.W.2d 466 (noting that a "defamatory communication must be a statement of fact" (citation omitted)).

¶18 The circuit court found that some of Johnson's statements were "mixed opinions" which "impl[y] the allegation of undisclosed defamatory facts," namely that MacCudden "abuses her position of power over students" and is "unfit[] to teach."

¶19 A "'[m]ixed opinion' is a communication which blends an expression of opinion with a statement of fact." *Id.* (quoting WIS JI—CIVIL 2500). A communication of this nature is actionable "if it implies the assertion of undisclosed defamatory facts as the basis of the opinion." *Id.*; *Terry*, 351 Wis. 2d 479, ¶14.

¶20 Here, we are not convinced that a reasonable person reading Johnson's statements would have understood her to be implying that MacCudden abused her position of power or was unfit to teach. *See Bauer*, 191 Wis. 2d at 523 (stating that we examine "whether the words complained of are 'reasonably capable of conveying a defamatory meaning to the ordinary mind and whether the meaning ascribed by [the] plaintiff[] is a natural and proper one'" (citation omitted; brackets in original)); *Terry*, 351 Wis. 2d 479, ¶19 (stating that "the words … must be construed in the plain and popular sense in which they would naturally be understood" (citations omitted)). Johnson was not commenting on MacCudden's teaching record or qualifications. Further, Johnson did not indicate

that she had any personal experience with MacCudden or was basing her statements on anything other than what she disclosed from her LinkedIn profile.

¶21 Lastly, we note MacCudden asserts that Johnson's posts "had negative connotations." The fact, however, that a statement is negative does not standing alone constitute defamation. Defamation occurs when a statement asserts a false statement of fact. *See **Mach***, 259 Wis. 2d 686, ¶12; ***Laughland***, 365 Wis. 2d 148, ¶¶27-28. Here, Johnson's statements cannot be proven true or false.

¶22 Therefore, for the reasons above, we agree with Johnson that her statements are not actionable as defamation, and we reverse and remand for the circuit court to enter summary judgment in Johnson's favor.

*By the Court.*—Order reversed and remanded with directions.

Not recommended for publication in the official reports.

9

No.  2024AP876 (D)

¶23  COLÓN, P.J. (*dissenting*).  The majority reverses the circuit court's denial of Johnson's motion for summary judgment in this defamation action brought by MacCudden for posts on social media, and the majority does so on the grounds that Johnson's posts constitute opinion, are vague, and do not have a clear meaning or definition.  I respectfully disagree.  Rather, I would conclude as the circuit court did, namely that there is a genuine issue of material fact as to whether Johnson's statements are mixed opinions that imply the allegation of undisclosed defamatory facts.  *See **Terry v. Journal Broad. Corp.**,* 2013 WI App 130, ¶23, 351 Wis. 2d 479, 840 N.W.2d 255.

¶24  While Johnson did not provide any specific examples in her posts, the fact that Johnson specifically identified MacCudden and her position as a Social Justice Coordinator in the posts imply the possibility that Johnson is aware of, but has not disclosed, specific defamatory facts.  Johnson's posts were not merely general statements that Johnson did not support public school systems having a social justice coordinator position or that Johnson found woke ideology offensive.  General statements of this nature constitute opinions that cannot serve as the basis of a defamation action.  Here, however, I cannot ignore the context that the posts were specifically about MacCudden and her holding the specific position of Social Justice Coordinator.  *See id.*, ¶19 ("The context and circumstances in which the statements were made are also to be considered.").  This specific identification of MacCudden and her position as a Social Justice Coordinator creates the possibility that Johnson's statements are more than mere opinions.  I would, therefore, send this case to the jury to decide whether

Johnson's statements—that have been specifically connected to MacCudden—are defamatory.